IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
VS. : CR. No. 03-81-01ML
: (Superseding Indictment)
NIGEL POTTER; :
DANIEL BUCCI; and :
BURRILLVILLE RACING ASSOCIATION :
a/k/a LINCOLN PARK :
a/k/a LINCOLN GREYHOUND PARK :
a/k/a LINCOLN PARK, INC. :

**DEFENDANTS NIGEL POTTER'S, DANIEL BUCCI'S AND LINCOLN PARK, INC.'S MEMORANDUM IN SUPPORT OF INTRODUCTION OF GOLDMAN CONTRACTS**

Defendants Nigel Potter, Daniel Bucci and Lincoln Park, Inc. seek introduction of two consulting contracts (copies attached) entered into by Burrillville Racing Association (Lincoln Park's predecessor) and United Track Racing, Inc. (a former subsidiary of Wembley USA) with an attorney, Alan Goldman. These contracts were the subject of testimony at the first trial from both Skip Sherman and Nigel Potter. The contracts themselves were not admitted into evidence. They were proffered by the defense only belatedly to contradict testimony from Mr. Sherman to the effect that Wembley had not hired political consultants or attorneys on a contingency basis in the past. The government acknowledged that they might be "marginally relevant" even for this limited purpose, Tr. 2/14/05 at 127, but objected essentially on the ground that the impeachment point had already been made during testimony. *Id.*

Impeachment aside, the significance of these contracts as affirmative circumstantial evidence corroborating Nigel Potter's state of mind cannot be gainsaid: At the time Mr. Potter was confronted with the McKinnon proposal, he was aware that Wembley had previously paid attorney Alan Goldman a million dollars for his work in obtaining VLTs as a political consultant.

This information provided a significant marker for Mr. Potter, both as to the large quantum of remuneration and the propriety of such a contingency contract for a political consultant. The government argued aggressively that the McKinnon payment must be illicit because it was so large (larger than the combined earnings of Mr. Potter and Mr. Elliott). This evidence demonstrates that the sheer size of the proposed payment did not necessarily suggest bribery to Mr. Potter, given his knowledge of the Goldman contract. As Mr. Potter testified, he had no knowledge that the Goldman contract was in any way inappropriate.[1] Tr. 2/10/05 at 77. Secondarily, the evidence regarding these contracts may serve to contradict Mr. Sherman if he continues to suggest that such contracts were unprecedented.

Rule 41 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 mandates that "[a]ll relevant evidence is admissible, except as otherwise provided by ... these rules." Here, the Goldman contracts are relevant because they corroborate Mr. Potter's testimony that these contracts were a significant part of his thinking when he was asked to consider Mr. Bucci's proposal regarding increased remuneration to Mr. McKinnon.

The First Circuit considered a comparable situation in *United States v. Perrotta,* 289 F.3d 155 (1st Cir. 2002). There, the defendant challenged the government's introduction of certain

---

1 Parenthetically, the actual propriety of the Goldman contracts is irrelevant. The core point here is the fact that the contracts existed, that Mr. Potter knew of them, and that he did not have any knowledge that they were inappropriate.

Defendants understand that the original contract was somewhat problematical, not because it was a contingency contract, but because it left Mr. Goldman's remuneration open: as a percentage of the take. *See,* Tr. 2/10/05 at 75 (government appears to agree with Mr. Potter that the contract's "open-endedness" was its problem). In essence, this made him a part owner of the Lincoln Park enterprise. This concern caused Lincoln Park to renegotiate the contracts into a fixed sum remuneration.

weapons in an extortion case. The weapons had been the subject of testimony and the defense argued that the government had no need to present the physical items themselves. The Circuit acknowledged the defense's point ("We discern no particular reason why the jury needed to see the actual weapons"), but it observed that "[i]t is a common place of trial practice that testimony about physical objects often leads to their introduction into evidence." *Id.* at 166. "That introduction serves to corroborate the testimony about the existence of the objects, a purpose captured by the familiar phrase 'seeing is believing.'" *Id.* (note omitted). In these circumstances, "[t]his added increment of probative value is appropriate unless it is substantially outweighed by the danger of unfair prejudice to the defendant." *Id.* (citation omitted).

The same rationale holds true here. It is critical to Mr. Potter's defense that the jury accept his testimony that his willingness to countenance Mr. Bucci's proposal had a real foundation in the history of the company. This probative value is not substantially outweighed by the Rule 403 considerations of unfair prejudice, confusion of the issues, delay, and needless presentation of cumulative evidence. There is no unfair prejudice to the government. Introduction of the contracts will take only a moment, so there will be no waste of time. It will not require a segue into remote events, because the events themselves are neither offered nor relevant. The only question is the impact of these contracts on Mr. Potter's state of mind in late 2000 and early 2001. The contracts themselves are short documents and will not require lengthy jury assessment. The documents are in no sense misleading, and their significance will already be clear through the type of testimony admitted in the first trial.

The Goldman contracts are highly relevant to the defense case. They should be admitted into evidence.

Respectfully submitted,
NIGEL POTTER
By his Attorneys,

C. Leonard O'Brien (E.T.)

C. LEONARD O'BRIEN (#1886)
B. JEAN ROSIELLO, ESQ. (#2886)
MacFadyen, Gescheidt & O'Brien
The Owen Building, 101 Dyer Street
Providence, RI 02903

Respectfully submitted,
DANIEL BUCCI
By his Attorney,

Anthony M. Traini (E.T.)

ANTHONY M. TRAINI (#4793)
56 Pine Street
Providence, RI 02903

Respectfully submitted,
LINCOLN PARK, INC.
By its Attorneys,

John Tarantino (E.T.)

JOHN A. TARANTINO (#2586)
PATRICIA K. ROCHA (#2793)
Adler, Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND
2005 JUL 25 A 10:22
FILED