MACFADYEN, GESCHEIDT & O'BRIEN
ATTORNEYS AT LAW

THE OWEN BUILDING
101 DYER STREET • PROVIDENCE, RI 02903

TELEPHONE
401-751-5090

FACSIMILE
401-751-5096

JOHN A. MACFADYEN
LISE J. GESCHEIDT
C. LEONARD O'BRIEN

OF COUNSEL
B. JEAN ROSIELLO
TAMARA A. BARNEY

October 27, 2005

**Via Hand Delivery**

The Honorable Mary M. Lisi
Judge, United States District Court
District of Rhode Island
United States Courthouse
Providence, RI 02903-1720

Re: *United States v. Nigel Potter, et. al.* CR03-81-01ML *(Amended Superceding)*

Dear Judge Lisi:

In its letter of October 26, 2005, the government informed this Court that it would oppose release pending appeal for Nigel Potter. Its asserted reasons are twofold: a claim that Mr. Potter poses a significant risk of flight; and an assertion that there is no substantial question of law or fact in this case which is likely to result in a reversal. Mr. Potter wishes to respond to both of these assertions.

First, as to flight, Mr. Potter has proven his willingness to comply with the requirements of this Court in the most tangible way possible: he has appeared each and every time he has been asked. He appeared for his arraignment, when he could have availed himself of extradition defenses. He appeared for trial, notwithstanding statements by the United States government at his very first appearance on September 19, 2003 that he was facing minimum imprisonment of fifteen and one-half years. *See,* transcript of September 29, 2003 at page 5, attached as *Exhibit A.* And now he has appeared again, this morning in counsel's office, when an incarcerative sentence is a certainty.

The government is being unrealistic when it suggests that Mr. Potter might be tempted to stay home and not return to the United States to commence his sentence. Unlike the pretrial situation, once a conviction has entered in a United States court, there are virtually no defenses to extradition from the United Kingdom. *See*, letter of Herbert Smith LLP, attaching Mr. Nicholls' "Opinion on international bail following conviction," both attached as *Exhibit B.* Mr. Nicholls is a barrister and Master of the Bench of Gray's Inn who has practiced extradition-related law for almost twenty years. He is the co-author of a book on extradition law published in 2002. Mr. Nicholls reports that the United Kingdom recently passed the Extradition Act of 2003, effective January 1, 2004. According to Mr. Nicholls' opinion, this Act makes extradition from the

United Kingdom quicker and easier than it was when Mr. Potter waived extradition in 2003. Today, the exercise of executive discretion to refuse extradition "has essentially been abrogated." *Id.* If Mr. Potter failed to return for sentence, "the extradition process would be short" and Mr. Potter would have no defense. *Id.*

If Mr. Potter were to refuse to comply with a judicial instruction to return to the United States to start serving his sentence, he would be arrested and incarcerated in Britain. He would then be shipped back to this country. None of this incarceration would count toward his United States sentence; and, on his return, he would be facing a new criminal charge, bail jumping, with the certainty of receiving a substantial and consecutive sentence. Nigel Potter has little more ability to hole himself up in England against the process of this Court than he would have if he were a resident of Montana.

Mr. Potter also attaches hereto a letter from Colin A. Pike, Community Beat Sergeant of the Thames Valley Police Station, concerning Mr. Potter's compliance with the conditions of his bail in the past. Mr. Pike states that Mr. Potter has complied with the conditions of his bail, has relinquished his passport and has never had to be reminded of his duties. "Should Mr. Potter be given bail I am happy for the existing conditions to continue." *Id.*

The government supplements its argument with the observation that Mr. Potter's indisputable compliance with his conditions of release has been done "while mounting a vigorous defense ...." This is not a fair consideration. A "vigorous defense" is what the Sixth Amendment intends, indeed requires. Mr. Potter has come to the United States, mounted a "vigorous defense" and is now submitting himself to this Court's justice. There is not a particle of evidence anywhere that he will not continue to do so in the future.

As for the claim that defendant cannot satisfy the second component of 18 U.S.C. § 3143(b) of a substantial question of law or fact likely to result in reversal: A "substantial question of law or fact" is simply a "'close' question or one that well could be decided the other way." *United States v. Bayko,* 774 F.2d 516, 522-23 (1st Cir. 1985), quoting *United States v. Giancola,* 754 F.2d 898, 901 (11th Cir. 1985). The second component of the standard – that the appeal is "likely to end in reversal" – is merely a reformulation of the requirement that the error not be harmless or unprejudicial. *Id.* at 522. This standard "is applied flexibly." *United States v. Colon-Munoz,* 292 F.3d 18, 20 (1st Cir. 2002). This Court is thus not called upon to perform the self-defeating task of attempting to assess whether it committed reversible error. Section 3143 requires only that this Court be conscientiously objective about whether a substantial legal argument for reversal can be presented by the defendant.

Defendant will detail the substantial questions of law raised by this case when his motion for release is made and heard. Many are already obvious, as they have been the subject of lengthy briefing and ongoing arguments. They include the question of whether a wire fraud may be predicated upon evidence of a scheme which has not yet passed to an execution stage. This was raised pretrial as a motion to dismiss, during trial as part of the acquittal arguments, and as a request for instruction. There is also the question of whether this Court satisfied the *Sawyer/Woodward* mandate that "a protective instruction be used ... which would help the jury

understand the difference between 'reprehensible misconduct' which is not a violation of federal law, and misconduct which does form the basis for a federal conviction." *United States v. Woodward,* 149 F.3d 46, 55 (1st Cir. 1998), quoting *United States v. Sawyer,* 85 F.3d 713, 741 (1st Cir. 1996). In addition, there are the related instruction issues of this Court's refusal to give a "no-strings attached" instruction and its refusal to give the "independent evidence" instruction required in *Sawyer, supra* at 725, where an alleged scheme "does not have, as its necessary outcome" the deprivation of honest services.

There are also numerous evidentiary issues, including the exclusion of evidence tending to show that both Mr. Potter and Mr. Bucci kept Mr. Sherman and Mr. Brents informed of developments and affirmatively desired their retention as persons responsible for administering the finances of Lincoln Park. Also at issue is the repeated introduction of evidence admissible only as to Mr. Bucci, which the jury heard and, as a practical matter, is not likely to have been able to discount in its assessment of Mr. Potter's case. And finally, there is, of course, the prosecutor's closing argument, which this Court has already found to have been inappropriate as a matter of law. The only substantial question for the Circuit is whether the ordinary prejudice ensuing from such an argument was sufficiently diluted by this Court's cautionary instruction. And on this point – the harmless error point – as noted above, the bail assessment is "flexible."

On the question of waiver of the public safety factor (PSF) applied to Mr. Potter as a foreign national: Mr. Potter understands that the BOP manual welcomes recommendations to waive the PSR and that eighty-five percent of such judicial recommendations are followed.

The government argues that Mr. Potter will be eligible for a *low* security facility even without the waiver. While true, a low security facility is quite different from, and much harsher than, a *minimum* security facility or camp. For example, there is less freedom of movement and more lock-up; less visitation is allowed; greater restrictions are imposed on telephone contact. Mr. Potter respectfully submits that it is neither necessary nor appropriate to subject him to harsher conditions characteristic of a low security facility solely because he is a foreign national.

Thank you for your consideration of these points.

Sincerely,

C. Leonard O'Brien
B. Jean Rosiello

CLO/BJR/et
Enclosure
cc: Lee H. Vilker, Esq.
John A. Tarantino, Esq.,
Patricia K. Rocha, Esq.,
Anthony M. Traini, Esq.,

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * *

UNITED STATES OF AMERICA

C.R. NO. 03-81-01 ML
C.R. NO. 03-81-02 ML
C.R. NO. 03-81-03 ML

vs.

PROVIDENCE, RI
SEPTEMBER 19, 2003

NIGEL POTTER
DANIEL BUCCI
BURRILLVILLE RACING ASSOC.

* * * * * * * * * * * * * *

BEFORE HONORABLE ROBERT W. LOVEGREEN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE GOVERNMENT: JAMES H. LEAVEY, ESQ.
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
528-5477

FOR DEFENDANT POTTER: C. LEONARD O'BRIEN, ESQ.
129 Dyer St.
Providence, RI 02903
751-5090

FOR DEFENDANT BUCCI: ANTHONY M. TRAINI, ESQ.
55 Pine St.
Providence, RI 02903
621-4700

FOR DEFENDANT BURRILLVILLE: JOHN A. TARANTINO, ESQ.
2300 Hospital Trust Tower
Providence, RI 02903
274-7200

COURT REPORTER: JOSEPH A. FONTES
Two Exchange Terrace Rm 208
Providence, R.I. 02903-1779
752-7110

Proceeding reported and produced by computer-aided stenography

EXHIBIT A

There are a number of factors. Obviously, he has no roots in the United States. That, in and of itself, is not surprising. He's a citizen of Great Britain. But it's a factor the Court should consider.

If he is convicted, the Government believes under the sentencing guidelines he's facing a minimum sentence of 15 and-a-half years in prison. We can argue, and I suspect some day we will be arguing, as to what sentencing guideline applies. But an individual who is 56 years of age, who contemplates going back to the United States for trial, with at least a reasonable possibility, if not probability, of conviction, and he will spend a significant portion of the rest of his life in prison, would seem to militate against his returning and his exercising that right that he has to fight extradition.

The fact that he would be charged with bail jumping is insignificant compared to that lengthy prison sentence. In fact, if he was convicted of all counts, that would be merged with the conviction on all the counts.

He's obviously here, but just last week he told the London Telegraph that he was thinking of not coming to the United States. I don't know what his thinking is going to be next week, but if he changes

Herbert Smith

C Leonard O'Brien Esq
Macfadyen, Gescheidt & O'Brien
The Owen Building
101 Dyer Street
Provident
RI 02903
USA

Herbert Smith LLP
Exchange House
Primrose Street
London EC2A 2HS
T +44 (0)20 7374 8000
F +44 (0)20 7374 0888
D +44 (0)20 7466
DX 28

www.herbertsmith.com

Our ref
2113/3192/30834044
Your ref

Date
27 October 2005

Dear Sirs

**Nigel Potter**

We are responding to your questions regarding Nigel Potter's exposure to extradition from the United Kingdom to the United States, if, after being released pending appeal, he should refuse to return to serve his sentence. We understand that this letter may be used in support of Mr Potter's request for bail, and toward that end, shared with the United States District Judge Lisi whose is presiding over his case.

The Opinion has been provided by Clive Nicholls QC, a barrister and Master of the Bench of Gray's Inn. He was called to the Bar of England and Wales in May 1957. In 1982 he was appointed Queen's Counsel and has held the appointment of Recorder of Crown Courts. He is a member of the Bar of the Australian Capital Territories and has been enrolled in the High Court of Australia. He has been admitted (for specific cases) to the Bars of Ireland, Fiji, the Commonwealth of The Bahamas, Hong Kong, Malaysia and the Cayman Islands. He has practised, almost exclusively since 1984, in extradition and mutual legal assistance appearing for and advising governments and accused in many countries. He is the co-author with Clare Montgomery QC and Julian Knowles of "The Law of Extradition and Mutual Assistance. International Criminal Law, Practice and Procedure" published in April 2002. He holds the degrees of MA in Legal Science and LLB from Trinity College, Dublin and of BA (ad eundem) and LL.M from the University of Cambridge. He practises from Chambers at 3 Raymond Buildings in Gray's Inn and is the head of Chambers.

This opinion is furnished solely for the benefit of Nigel Potter. However, as indicated above, a copy of this opinion can be given to Judge Lisi and a copy can be provided, if required, to the US Attorney dealing with the matter. However, this opinion may not be distributed, circulated, quoted, referred to or relied upon or otherwise disseminated to any other entity or person other than those listed above, without our prior written consent.

Yours faithfully

Herbert Smith LLP

**Herbert Smith LLP**

Herbert Smith LLP is a limited liability partnership registered in England and Wales with registered number OC310989. It is regulated by the Law Society of England and Wales. A list of the members and their professional qualifications is open to inspection at the registered office, Exchange House, Primrose Street, London EC2A 2HS. We use the word partner to refer to a member of Herbert Smith LLP, or an employee or consultant with equivalent standing and qualifications.
10\2361851_1



Herbert Smith in association with
Gleiss Lutz and Stibbe

EXHIBIT B

Herbert Smith

**RE: NIGEL POTTER**

Opinion on international bail following conviction

1. Mr. Potter returned voluntarily to the United States to stand his trial. At the time he did so the law governing extradition from the United Kingdom ('UK') was governed by the Extradition Act 1989 and the Treaty between the United Kingdom of Great Britain and Northern Ireland and the Government of the United States of America for the reciprocal extradition of offenders of June 8th 1972. Mr. Potter's extradition from the UK had he decided not to return voluntarily to the US would have involved the delays that were inherent in that extradition scheme requiring a prolonged hearing and the undoubted burden on the US of producing evidence sufficient to warrant his trial in the UK had the conduct complained of been committed in the UK. There is no doubt that he facilitated and assisted the administration of justice in the US by taking the course of returning voluntarily.

2. The question that I am now asked to address follows from his conviction and the delay that may follow from the moment of his sentence and his being taken into custody should the sentence involve his incarceration.

3. It is not unknown in my experience for a person convicted in the US to be granted international bail following sentence and before being taken into custody. So far as Mr Potter is concerned he has already demonstrated by his surrender to the USA his firm intention to obey the orders of the US Court.

4. There is a further factor. Since Mr Potter's return to the USA the UK has legislated a new scheme of extradition, the Extradition Act 2003. It commenced on 1st January 2004. It is important to stress that the scheme is, so far as material, wholly statutory. Neither the existing extradition 1971 Treaty between the UK and the USA (as amended), nor the new one signed in 2003 (but not yet ratified in the US) have any bearing on the extradition process. The new scheme makes the process of a request easier and speedier to accomplish. There is a set timetable for each stage, the routes of appeal are limited and the exercise of executive discretion to refuse extradition has essentially been abrogated. In Mr Potter's case, in the unlikely event having been granted international bail, that he failed to return to the US for sentence the extradition process would be short. Further, being treated as a person convicted, as opposed to a person accused, it is difficult to see what answer he would have to the request.

27th October 2003

Clive Nicholls QC
Gray's Inn



Herbert Smith in association with
Gleiss Lutz and Stibbe

THAMES VALLEY
POLICE

**Colin Pike**

**Community Beat Sergeant**

Thames Valley Police
Police Station
High Street
Ascot
SL5 7JH
tele: 01344 87 1415
fax: 01344 87 1430
e-mail colin.pike@thamesvalley.pnn.police.uk

Date 19th October 2005

The Honourable Mary Lisi
United States District Court Judge
District of Rhode Island
United States Courthouse
Providence R102903

**Mr Nigel Potter**
**Miontana House Broomfield Park Sunningdale Berkshire United Kingdom**

Your Honour,

Mr Potter started reporting on Bail at this police station in October 2003. Since that time he has complied with the conditions of his bail and regularly attended and signed his bail card. Further more he has relinquished his passport as and when required and following visits to the United States has always returned his passport to us.
We have never had cause to remind Mr Potter or send officers to his home address due to any violations of his Bail conditions. Should Mtr Potter be given bail I am happy for the existing conditions to continue.

C.A.PIKE
PS 2937.

EXHIBIT C